ORDER DENYING REQUEST FOR STAY AND RETURN OF CHILD
GARY P. SULLIVAN, Chief Justice.
A REQUEST FOR STAY AND RETURN OF CHILD, in the nature of a PETITION FOR REVIEW, but not labeled as such, having been filed on January 8, 2000[1], by Mary L. Zemyan, Esq., on behalf of the subject minor child’s biological lather, GREGAN WORTMAN, from an ORDER finding, inter alia, that good cause existed to remove the child from the biological parents’ custody and further, finding good cause to make the child a ward of the Tribal Court. The Order mandated the immediate return of the child from the paternal grandparent’s home in Maine, The Honorable John Christian, presiding. The biological mother is represented by Leighton E. Reum, Lay Counselor at Law, who was served with all of the documents before this Court by personal delivery on January 8, 2000. The subject child is represented by LaFon Copenhaver, Guardian ad litem for the Ft Peck Tribes, who reportedly refused service of the documents by personal delivery on January 8, 2000. After reviewing all of the documents filed, the Court finds as follows:
1. On or about July 23, 1999, Maxine Grant, the maternal grandmother of the subject infant, obtained a temporary custodial order in her favor from the Ft Peck Tribal Court.
2. On or about August 12, 1999, a Petition for Custody was filed in the Ft Peck Tribal Court on behalf of Yoland Walking Eagle and Gregan Wortman, the biological parents of the child. A hearing was calendared for September 3, 1999, at which time the Ft Peck Tribal Court found that Maxine Grant had never filed a petition for custody. Accordingly, the Tribal Court vacated it’s previous custodial order in her favor and gave custody to the biological parents. It was not clear whether this ‘return of custody’ was pursuant to the petition for joint custody filed on behalf of the parents, or whether it resulted solely from the disclosure that no petition had been previously filed by Maxine Grant.
3. On or about November 5, 1999, Yolanda Walking Eagle filed a petition in the Ft Peck Tribal Court for sole custody of the subject minor child.
*171 4. Sometime in December, 1999, a Petition for Emergency Hearing, pursuant to Title V, CCOJ, § 202, was filed by LaFon Copenhaver, Guardian ad litem for the Ft Peck Tribes.
5. On December 27, 1999, an emergency hearing was held in the Ft Peck Tribal Court and following that hearing, the Court, The Honorable John Christian, presiding, found that the Ft Peck Tribal Court ‘has exclusive jurisdiction over the determination of this matter under the Indian Child Welfare Act of 1978 (25 USC § 1911(a)) and the Ft Peck Tribal Comprehensive Code of Justice. A written ORDER was signed by the Tribal Court on January 3, 2000, but was not received by the biological father’s attorney until Saturday, January 8, 2000.
6. Following the finding of jurisdiction, the Tribal Court made the child a ward of the Court and found that it was in the best interests of the child to be removed from the paternal grandparents’ home in Maine, where the biological father had placed the child without knowledge of the biological mother and without leave of the Tribal Court,
7. The biological father objects to the finding of jurisdiction in the Tribal Court and cites Mississippi Band of Choctaw Indians v. Holy field, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) as standing for the principle that domicile (one of the jurisdictional elements of the ICWA) for children born out of wedlock, follows the natural mother and that the natural mother is a resident of Billings, MT., and further is presently incarcerated in the Yellowstone Detention Facility. The biological father also notes that the child is presently residing in Maine and is being properly cared for and, in fact, is thriving in her present environment.
8. Based upon the representations of Mary L. Zemyan, Esq., that time was of the essence, and that the child would be unnecessarily uprooted by the Tribal Court’s order and that the Tribal Court did not have jurisdiction of this matter because the child was not domiciled in Ft Peck, this Court accepted the matter for emergency review, conditioned upon the fact that all interested parties would be served with all of the documentation that would be forwarded to the Court and, if necessary, that all parties would be allowed to address the Court before any decision was made adverse to their respective positions.
9.After thoroughly reviewing the cited law, as well as 28 USC 1738A (The Full Faith and Credit for Child Custody Act), this Court finds that the Ft Peck Tribal Court does have original and continuing jurisdiction of this matter. However, it is the opinion of this Court that jurisdiction is not given to the Ft Peck Tribes pursuant to 28 USC 1911(a) (The Indian Child Welfare Act), but rather, jurisdiction is pursuant to 28 USC 1738A and the CCOJ. Whether the ICWA will eventually play a role in this matter remains to be seen. At the present time, it appeal's that the invocation of this law may be premature. Nonetheless, when our Tribal Court issues a child custodial order, the words “until further order of the Court” must always be read into the order, whether those exact words actually appear or not. Our Courts, as well as virtually every Court in this nation which exercises jurisdiction over domestic matters, retain jurisdiction once it has issued a custodial order. It is precisely for that reason that 28 USC 1738A was enacted and signed into law in October, 1994. As recited previously, there have been no less than four (4) separate attempts to obtain custody of this child, all such attempts having been made in the Ft Peck Tribal Court. Whether there is a State that could exer *172 cise jurisdiction of the custody of this child and whether such an exercise of jurisdiction would defeat the present jurisdiction of the Ft Peck Tribal Court, may be an open question, the answer to which could be found in the laws cited above. What is clear is that no such question is before this Court at this time. Equally clear is that the Ft Peck Tribal Court, based upon all of the facts and frequent travel of all of the parties to it’s doorstep, has original and continuing jurisdiction of this matter until it declines such jurisdiction.
NOW THEREFOR IT IS THE ORDER OF THIS COURT THAT the Request for Stay and Return of Child is denied.

. The Request was actually faxed to the home of the Chief Justice. Inasmuch as it was Saturday, the Courts were not opened for business. This order assumes that the Request for Stay and Return of Child will be filed with the Clerk of the Ft Peck Court of Appeals at the earliest possible date.